UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
04-10048-NG

UNITED STATES OF AMERICA

v.

GIECLIFF RODRIGUEZ

MEMORANDUM AND ORDER ON GOVERNMENT'S
<u>MOTION FOR DETENTION</u>

March 19, 2004

COHEN, M.

    The above-named defendant was arrested on the basis of an indictment charging him with distribution of cocaine and conspiracy to do so.  On the occasion of his first appearance, the government moved for pretrial detention on the grounds of danger to the community and risk of flight, and on the further ground that the defendant posed a danger to potential witnesses.  After appointment of counsel, the detention hearing was held on March 4, 2003.  The defendant sought a continuance for final argument on the question of detention, and final arguments were heard on March 17, 2004.

    I. A. Under the provisions of 18 U.S.C. 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person."  Thus, a defendant must be released under the provisions of 18 U.S.C. 3142(b) or (c), or

detained pending trial under the provisions of 18 U.S.C. 3142(e). See 18 U.S.C. 3142(a).

Under ß3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of ß3142(f), "...that no condition or combination of conditions (set forth under ß3142(b) or (c)) will reasonably assure the safety of any other person or the community....", or if the judicial officer finds by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of ß3142(f), "...that no condition or combination of conditions (set forth under ß3142(b) or (c)) will reasonably assure the appearance of the person as required ...".[1]

B. The government is entitled to move for detention on grounds of danger to the community in a case that--

(1) involves a crime of violence within the meaning of ß3156(a)(4);

(2) involves an offense punishable by death or life imprisonment;

(3) involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is

---

[1] The distinction between the former and latter are made clear by the very language of Section 3142(f). In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u>...". (Last emphasis added). By not requiring that same standard <u>vis a vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applies. And that is precisely the holding in this and other Circuits. See e.g., <u>United States</u> v. <u>Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991); <u>United States</u> v. <u>Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987); <u>United States</u> v. <u>Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir.), <u>cert. dismissed</u>, 107 S.Ct. 562 (1986); <u>United States</u> v. <u>Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985); <u>United States</u> v. <u>Himler</u>, 797 F.2d 156, 161 (3d Cir. 1986).

imprisonment for ten years[2] or more; <u>or</u>

(4) involves <u>any</u> felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua sponte</u> may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where there is a serious risk of obstruction of justice or threats to potential witnesses. See 18 U.S.C. 3142(f).

C. In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning--

    (a) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (b) the weight of the evidence against the accused;

    (c) the history and characteristics of the person, including--

    (i) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (ii) whether, at the time of the current offense or arrest, he was on probation,

---

[2] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. <u>See</u> <u>United States</u> v. <u>Moss</u>, __ F.2d __, No. 89-1859, Sl.Op. 8-12 (1st Cir. October 5, 1989).

on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(d) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release....

D.  Additionally, in making the determination, the judicial officer must consider two <u>rebuttable</u> presumptions, to wit:

<u>First</u>, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the <u>safety</u> of any other person or the community if the judicial officer finds (1) that the defendant has been convicted of a Federal crime of violence within the meaning of ß3156(a)(4) [or a state crime of violence within the meaning of ß3156(a)(4) if the offense would have been a <u>federal</u> offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act--e.g., possession of cocaine, heroin, more than 1000 pounds of marihuana, with intent to distribute--, or the Controlled Substances Import and Export Act, <u>or</u> any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later.

Second, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under the provisions of 18 U.S.C. 924(c)--i.e., use of or carrying a firearm during the commission of a federal offense which is a felony.

Insofar as the latter "presumption" is applicable in assessing "risk of flight", the burden remains with the government to establish "...that no condition or combination of conditions will reasonably assure the appearance of the person as required....". In striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight. The burden then rests on the defendant to come forward with "some evidence", United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991), indicating that these general findings are not applicable to him for whatever reason advanced. At this point, this court must weigh all relevant factors [set forth under ß3142(g)], and then determine whether any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required....".  The decision is an individualized one based on all relevant factors. See United States v. Jessup, 757 F.2d 378 (1st Cir. 1985).[3]

---

[3] The presumption is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under Section 3142(d).  On later occasion, the United States Court of Appeals has observed, inter alia:

Additionally, with respect to those presumptions which are triggered by a finding of probable cause that the accused committed the offense with which he is charged, the return of an indictment "fair upon its face" conclusively establishes the existence of probable cause, and triggers the applicability of the particular presumption.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Vargas, 804 F.2d 157, 161 (1st Cir. 1986); United States v. Dominiguez, 783 F.2d 702 (7th Cir. 1986); United States v. Hurtado, 779 F.2d 1467, 1477-1479 (11th Cir. 1985); United States v. Contreras, 776 F.2d 51, 52, 54-55 (2d Cir. 1985); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence. To the contrary, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate, on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983)--

> The concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation

---

Section 3142(e), however, only imposes a burden of production on a defendant.  The burden of persuasion remains with the government.  Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but retains evidentiary weight--the amount depending on how closely defendant's case resembles the congressional paradigm, Jessup, 757 F.2d at 387--to be considered along with other factors.

United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987)(per curiam); see also, United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).  Even when a defendant produces "some evidence" in rebuttal, however--

> the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight. (Emphasis added).

United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(Emphasis added). See also, United States v. Rodriquez, 950 F.2d 85, 88 (2d Cir. 1991).

> in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger <u>that the defendant might engage in criminal activity to the detriment of the community</u>. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence....The Committee also <u>emphasizes</u> that the risk that a defendant will <u>continue to engage</u> in drug trafficking constitutes a danger to the "safety of any other person or the community." (Emphasis added; footnotes omitted).

See also, <u>United States</u> v. <u>Hawkins</u>, 617 F.2d 59 (5th Cir.), certiorari denied, 449 U.S. 962 (1980)(trafficking in controlled substances).[4]

Finally, the presumptions are applicable if the judicial officer finds probable cause to believe that the accused has committed one of the predicate offenses referred to above, even if the charge before the court does not involve that particular offense. See <u>United States</u> v. <u>Bess</u>, 678 F.Supp. 929, 934 (D.D.C. 1988); <u>but see</u>, <u>United States</u> v. <u>Chimurenga</u>, 760 F.2d 400 (2d Cir. 1985).[5]

II.  The defendant is twenty-five years old, having been born in the Dominican

---

[4]  A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of 18 U.S.C. 3142(f)(1)(A) through 3142(f)(1)(D).  That is to say, even if a detention hearing is appropriate under Sections 3142(f)(2)(A) through 3142(f)(2)(B) [for risk of flight or danger of obstruction of justice or intimidation of witnesses], danger to the community is not a basis upon which a defendant may be ordered detained prior to trial, unless the government has moved under Section 3142(f)(1), and the judicial officer has determined that a hearing is appropriate under that latter section.  See <u>United States</u> v. <u>Ploof</u>, 851 F.2d 7 (1st Cir. 1988).

[5]  In this court's view, Judge Robinson's decision in <u>Bess</u>, <u>supra</u>, is the more persuasive one, the holding in <u>Chimurenga</u>, <u>supra</u>, notwithstanding.  The Bail Reform Act of 1984 was modeled, in large part, on the preventative detention statutes in effect for a number of years in the District of Columbia.  This court does not view the requirement that the offense giving rise to the statutory presumption be contained within the formal charge as consistent with the procedural framework imposed by the statute.  The <u>Chimurenga</u> court seems to suggest that the requirement is necessary to provide fair notice to the defendant that the statutory presumption will come into play.  But a formal charge, as such, is only one method by which to give that fair notice.  For example, in a complaint charging armed bank robbery in violation of the provisions of 18 U.S.C. 2113(d), the operative facts set forth in the affidavit in support of the charging complaint may well state that the defendant was using a firearm during the commission of the robbery.  That is clearly fair notice.

Given the charges against defendant Carmelo Rodriguez, the statutory presumptions clearly apply to this case.

Republic in 1983.[6] He reports that he lives at 19 5th Street in Lowell, having lived there for the past two weeks. Prior to that, he lived at another address in Lowell for three to four months.[7] His mother resides in North Andover, and his father (with whom he has no current relationship) resides in New Jersey. He is currently unemployed[8] and has no significant assets or liabilities. He is a heavy abuser of cocaine, consuming some 8 grams each day.

He has a significant prior criminal record, but, save one conviction for shoplifting, no prior convictions. That record, however, does show six defaults and/or the issuance of warrants for failure to appear. And it further shows that all five of the sales of cocaine by the defendant were made while he was on bail in the state courts.[9] He has had two civil restraining order entered against him in the past three years, both at the behest of Melisza Lopez.

III. The record evidence before this court, consisting of the affidavit of Special Agent Mark Karangekis and his testimony, shows that the defendant, prior to his arrest, held a leadership position in the statewide organization of the Latin Kings,[10] a national

---

[6] On two occasions, he misrepresented his alienage and place of birth. When interviewed by Pretrial Services with his counsel present, he represented that he was born in New York City. And again, when questioned by this court under oath, he said that he was born in New York City.

According to BICE, he entered as a legal permanent resident in 1985.

[7] Registry of Motor Vehicle records reflect an address which was not given by the defendant as one of his former addresses.

[8] For alt appears that an employer would hire him if released from custody.

[9] For assault and battery and/or firearms charges.

[10] He is presently holds the title of Minister of Defense.

He has also been referred to as the ìnumber three warriorî in the state wide Latin Kings by another Latin King member in a recorded conversation.

gang involved in illegal activity, including the distribution of controlled substances.[11] During the course of the investigation, he sold cocaine to cooperating witnesses on five different occasions, all of which were audio-taped and videotaped.  During the course of one of those sales, he brandished a firearm removed from his waistband, and said that he had been involved in a gang shooting.  On another occasion, he said that he could sell the cooperating witness guns.  On yet another occasion, he said that he was armed and that he shot another gang member in the knee.  As indicated above, p. 8, all of these transactions were conducted while the defendant was on bail in connection with unrelated state court charges.  Upon the occasion of his arrest, he uttered threats against one of the cooperating witnesses.

  IV.  In the circumstances, this court finds and concludes that no condition or combination of conditions - short of pretrial detention - would reasonably assure the presence of the defendant at trial or the safety of the community.

  Given the nature of the offenses charged, the statutory presumptions referred to above, pp. 3-7, clearly apply to this case.  And the defendant has proffered nothing which affects the weight of that statutory presumption.[12]

  To the contrary, on the matter of flight, although it appears that the defendant

---

[11] The structure and purpose of the national Latin Kings is set forth in the Affidavit of Special Agent Karangekis.

[12] "[T]he presumption does not disappear. The burden of persuasion remains on the government <u>and the rebutted presumption retains evidentiary weight</u>." (Emphasis added).

<u>United States</u> v. <u>Dillon</u>, 938 F.2d 1412, 1416 (1st Cir. 1991)(Emphasis added). <u>See also</u>, <u>United States</u> v. <u>Rodriquez</u>, 950 F.2d 85, 88 (2d Cir. 1991).

  That does not mean, of course, that the presumption is conclusive.  The question is whether the defendant has produced some evidence to show "that what is true in general is not true in [his] case....".   <u>Jessup</u>, supra, at 384.

has resided in the Lowell area since 1985, he has no permanent place of abode. He is currently unemployed, and has no significant assets or liabilities. He is currently an abuser of controlled substances. Because of the brandishing of the firearm, the defendant faces a <u>mandatory</u> <u>minimum</u> sentence of five years on and after any sentence for his sale of cocaine. And beyond that, once the defendant has completed the service of a rather lengthy sentence of imprisonment, he faces automatic deportation. Given the factors, the government has shown by a preponderance of the evidence that no condition or combination of conditions short of pretrial detention, and certainly not the conditions proffered by the defendant,[13] would reasonably assure the presence of the defendant.

So, too, on the matter of being a danger to the community. The record evidence shows that the defendant is a regular dealer in cocaine, and one who is willing to add firearms to the mix. As was and is the case with some of his co-defendants, his past is the best predictor of his future. And that past shows that the defendant continued to deal in drugs, and offer the indiscriminate sale of firearms, <u>notwithstanding</u> the fact that he was then and there on bail in connection with other state offenses. Even after his arrest, he made it clear, by virtue of his threats against one of the cooperating witnesses, that he would, if released, pose a danger to the community. The government has established by clear and convincing evidence that the defendant, if released on conditions, would pose a danger to the community in general, and a danger to potential witnesses in particular.

---

[13] The defendant proffered that he would live would live with his girlfriend, Melisza Lopez, the very same person who requested and received two civil restraining orders against the defendant in the past three years.

V.  IT IS ACCORDINGLY ORDERED that the defendant be DETAINED pending trial, and it is further Ordered--

(1) That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3) On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

_____
UNITED STATES MAGISTRATE JUDGE